IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EUGENE HARDY, | * | |
| Plaintiff, | | |
| | * | |
| v. | | |
| | * | Civil Action No. GLR-25-2192 |
| OFFICER GABRIEL NKE, et al., | | |
| | * | |
| Defendants. | | |
| | * | |
| | * | |

\*\*\*

## **<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on self-represented Plaintiff Eugene Hardy's Motion for Appointment of Counsel (ECF No. 14), and Defendants Officer Gabriel Nke and former Warden Robert Dean Jr.'s (collectively, "Defendants") Motion to Dismiss or, in the alternative, for Summary Judgment (ECF No. 18), Motion to Seal (ECF No. 19), Motion for Leave to File Electronic Media (ECF No. 20), and Motion to Strike (ECF No. 28). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons outlined below, the Court will deny Hardy's Motion to Appoint Counsel, grant Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment, grant Defendants' Motion to Seal, deny as moot Defendants' Motion for Leave to File Electronic Media, and grant Defendants' Motion to Strike.

## I.    BACKGROUND

### A.    <u>Hardy's Allegations</u>

On or about December 17, 2023, Hardy was "mased [sic] . . . assaulted and stabbed" ten times by members of the Bloods gang while he was confined to Jessup Correctional Institution ("JCI") in Jessup, Maryland. (Compl. at 4, ECF No. 1).[1] He believes he was assaulted in this manner because he did not want to be a member of the gang. (<u>Id.</u>). Hardy adds that though he was the victim, Officer Gabriel Nke failed to protect him from the assault. (<u>Id.</u> at 5). Because of this, Hardy asserts that Officer Nke is liable for his injuries. (<u>Id.</u>). Hardy further asserts that Warden Dean is also liable because "he is the superintendent of the prison and is responsible for any matter that occur[s] in his prison." (<u>Id.</u>). According to Hardy, because he is a "ward of the State it is mandatory that [he] be protected" from violent acts committed by inmates. (<u>Id.</u>). As such, he seeks damages in the amount of one-million dollars from each defendant. (<u>Id.</u>).

### B.    <u>Defendants' Response</u>[2]

Defendants assert that the incident in question took place on December 16, 2023, at approximately 11:35am. (<u>See</u> Mot. Dismiss, or in the alt., Mot. Summ. J. ["MSJ"] at 3 n.1, ECF No. 18-1). At that time, Officer Nke was seated at the Tier Officer's desk when two

---

[1] Citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

[2] Defendants construe Hardy's complaint as raising an excessive force claim under the Eighth Amendment. (<u>See</u> Mot. Dismiss, or in the alt., Mot. Summ. J. at 5, ECF No. 18-1). However, this Court can find no indication in the initial pleading that Hardy intended to raise such a claim; rather, the complaint raises only a failure to protect claim under the Eighth Amendment. (<u>See generally</u> Compl., ECF No. 1).

inmates began attacking Hardy. (Incident R. at 4, ECF No. 18-5). Nke gave the two assailants verbal commands to stop fighting which they ignored. (Id.). Nke then deployed pepper spray towards all of the inmates which stopped the attack; all three of the inmates were then escorted to the JCI medical section to be assessed. (Id.) According to the report, Hardy was "treated in house for 6 minor puncture wounds to his back." (Id.).

When the Detective-Sergeant assigned by the Intelligence & Investigation Division ("IID") contacted Hardy to investigate the incident, Hardy declined to be interviewed and indicated he did not want to press criminal charges against his attackers. (Id.). As a result, the Detective-Sergeant presented Hardy with a complaint withdrawal form, which he read and signed. (Id.).

The Detective-Sergeant reviewed surveillance footage of the incident, but the video was of little value because the camera "was approximately 100 feet from the location of the incident." (Id.) He further observed that "several inmates inadvertently blocked the view of the camera during this altercation" and that the "images captured by this camera [were] fuzzy and unclear" making it impossible to positively identify the participants. (Id.).

Review of the surveillance video reveals two important details. First, the assault was very short in duration. (See generally JCI Surveillance Footage [23-35-02638 D Bldg D Wing Bottom Front View] (CD-ROM, last modified Feb. 11, 2026) (on file with D.Md.)). Second, the correctional officers who were at the location responded immediately to stop the fight. (See id. at 00:12).

Medical records dated December 16, 2023, describe Hardy's injuries as a 0.3 cm cut to the left side of his head, two cuts to his left upper back, two cuts to his middle upper

back and two cuts to his right upper back. (Med. R. at 25, ECF No. 18-5). Hardy's wounds were cleaned and dressed, and he was given a Tetanus Toxoid vaccine, as well as Motrin 600mg twice a day for two days. (Id.).

Certified institutional records indicate that Hardy did not claim his two assailants as enemies until December 21, 2023, days after they assaulted him. (Truitt Decl. ¶ 3, ECF No. 18-7; Md. Div. Corrs. Enemy Alert & Retractions at 3, ECF No. 18-7). Defendants therefore assert that neither Nke, nor any other prison official, were on notice that Hardy's safety was threatened by the presence of those two particular inmates. (MSJ at 13).

Defendant Robert Dean, Jr., states in a declaration that he is the former Warden for JCI. (Dean, Jr. Decl. ¶ 1, ECF No. 18-8). He further states that he has no recollection of having known or spoken with Hardy, nor was he personally aware of the incident that occurred on December 16, 2023, when Hardy was attacked. (Id. ¶ 4).

Defendants also assert that Hardy has failed to properly exhaust administrative remedies prior to filing his complaint here. (MSJ at 5–9). They provide an Administrative Remedy Procedure complaint ("ARP") Hardy filed on July 10, 2024, which was dismissed for procedural reasons. (Req. Admin. R. at 1, ECF No. 18-2). The subject of the ARP concerned property that was missing after Hardy was moved from general population to administrative segregation following the December 16, 2023 incident. (Id.). Hardy did not appeal the response. (Donnelly Decl. ¶ 3, ECF No. 18-3; see also Woolford Decl. ¶¶ 4–5, ECF No. 18-4).

**C.** **Hardy's Opposition Response**

In opposition to Defendants' motion, Hardy reiterates his belief that his claim has merit[3] but also adds that Nke used excessive force when he deployed mace in an effort to stop the ongoing assault. (Pl.'s Resp. Defs.' MSJ ["Opp'n"] at 2, ECF No. 23). Hardy did not raise an excessive force claim in his complaint and may not add a new claim in opposition to Defendants' dispositive motion. See Woodbury v. Victory Van Lines, 286 F.Supp.3d 685, 692 (D.Md. 2017) (stating it is axiomatic that a plaintiff may not use their memorandum in opposition to amend the complaint); Allegis Grp., Inc. v. Bero, 689 F.Supp.3d 81, 142 (D.Md. 2023) (same); see also Equal Rts. Ct. v. Niles Bolton Assoc., 602 F.3d 597, 603 (4th Cir. 2010) (stating amendment of complaint may be denied when the amendment is prejudicial to the opposing party because it is belated and changes the nature of the litigation). Thus, to the extent Hardy attempts to add an excessive force claim, the Court will not address it here.

Hardy states at the end of his Opposition that "[i]n the discovery it states: it was an enemy alert; therefore it is the defendants fault for putting Plaintiff around his enemies to be stabbed." (Opp'n at 3). It is unclear what Hardy is referencing as there has been no discovery in this case and the only "enemy alert" in the records establishes that Hardy's assailants were listed as his enemies after the assault. (Truitt Decl. ¶ 3; Md. Div. Corrs. Enemy Alert & Retractions at 1).

---

[3] Hardy offers no facts to support the conclusory statements he makes in his opposition that his complaint states an Eighth Amendment claim, that Defendants are liable because he was injured, and that he exhausted administrative remedies. (Pl.'s Resp. Defs.' MSJ at 1–2, ECF No. 23).

**D.**     <u>**Reply and Surreply**</u>

Defendants' Reply asserts that Hardy has failed to state an Eighth Amendment claim for failure to protect and for excessive force. (Reply at 1–3, ECF No. 26). As noted, however, the excessive force claim is not properly before this Court and will not be addressed. The balance of the Reply reiterates the defenses raised in Defendants' dispositive motion. (<u>See</u> <u>id.</u> at 3–6).

Hardy's Surreply is a single page containing four paragraphs of conclusory statements that his complaint should not be dismissed but must be granted. (Pl.'s Surreply at 1, ECF No. 27). Setting aside the ineffective nature of the Surreply, Defendants filed a Motion to Strike the Surreply because Hardy did not first seek leave to file it. (Mot. Strike at 1, ECF No. 28). While Hardy's Surreply is not prejudicial, Defendants are correct that leave of Court is required before a Surreply may be filed, <u>see</u> Local Rule 105.2.a (D.Md. 2025), therefore the Court will grant Defendants' Motion to Strike.

**E.**     <u>**Non-Dispositive Motions**</u>

**1.**     **Motion to Appoint Counsel**

Hardy filed a Motion to Appoint Counsel on a pre-printed form motion that asserts financial hardship as well as incarceration as factors supporting his request. (Mot. Req. Appointment Counsel at 1, ECF No. 14). A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one and may be considered where an indigent claimant presents exceptional circumstances. <u>See</u> <u>Cook v. Bounds</u>, 518 F.2d 779, 780 (4th Cir. 1975); <u>see</u> <u>also</u> <u>Branch v. Cole</u>, 686 F.2d 264, 266 (5th Cir. 1982). There is no absolute right to appointment of counsel; an indigent claimant must present

"exceptional circumstances." Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. Dist. Ct., 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel); see also Jenkins v. Woodard, 109 F.4th 242, 248 (4th Cir. 2024) ("[A] district court must conduct a fact specific, two-part inquiry to assess whether a case presents exceptional circumstances before it decides whether to appoint counsel" including "whether the plaintiff has a colorable claim" and "considering the claim's objective complexity and the plaintiff's subjective abilities, whether the plaintiff lacks the capacity to present it." (internal quotations omitted)). Exceptional circumstances include a litigant who "is barely able to read and write," Whisenant, 739 F.2d at 162, or clearly "has a colorable claim but lacks the capacity to present it," Berry v. Gutierrez, 587 F. Supp. 2d 717, 723 (E.D.Va. 2008) (citing Waller v. Butkovich, 584 F.Supp. 909, 947 (M.D.N.C. 1984)).

Here, the Complaint concerns Hardy's allegations that Defendants failed to protect him from being assaulted by other inmates. (See Compl. at 4–5). Hardy presents a colorable claim, thus this Court must consider whether, given "the claim's objective complexity and the plaintiff's subjective abilities," Hardy "lacks the capacity to present it." Jenkins, 109 F.4th at 247. Because the Court does not find the issues present to be unduly complex, and because Hardy does not lack the capacity to present his claims, there are no exceptional circumstances that would warrant the appointment of an attorney to represent Hardy. His motion will therefore be denied.

**2.      Motion to Seal and Motion for Leave to File Electronic Media**

Defendants filed a Motion to Seal surveillance footage of the incidents alleged in Hardy's Complaint. (Mot. Seal ¶ 1, ECF No. 19). Because "[d]isclosure of security camera placement poses a safety concern to both incarcerated individuals housed within [Department of Public Safety and Correctional Services ("DPSCS")] facilities and staff," the Court will grant the Motion to Seal. (Id. ¶ 3). See Chrisman v. Bd. Of Cnty. Comms. of Okla. Cnty, No. CIV-17-1309-D, 2020 WL 12948695, at *2 (W.D.Okla. Oct. 9, 2020) (granting motion to seal video depicting inside of jail on basis of jail security, observing that "[t]he video footage shows dead spots in the video surveillance—a person could watch the videos and determine where to stand to avoid coverage of the cameras").

Additionally, Defendants filed a Motion for Leave to File Electronic Media, specifically the video footage discussed above. (Mot. Leave File Elec. Media at 1, ECF No. 20). Although the Motion contains no citation as to the reason counsel is seeking leave of Court to file the exhibit, it is presumably due to the provision in this Court's Electronic Case Filing Policies and Procedures Manual that provides instructions on filing physical exhibits. See Electronic Case Filing Pol'ys & Procs. Manual, III.A.6, CM/ECF version 6.1, (Sep. 2025). However, the first line of that paragraph states: "Except in civil prisoner cases, a party must seek leave of court to permit the non-electronic filing of exhibits . . . ." Id. Leave of Court is therefore not required to file electronic media in this case and the motion will be denied as moot.

## II.    DISCUSSION

### A.    <u>Conversion</u>

Defendants' Motion is styled as a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for Summary Judgment under Federal Rule of Civil Procedure 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. <u>See</u> <u>Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.</u>, 788 F.Supp.2d 431, 436–37 (D.Md. 2011), <u>aff'd</u>, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court has "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" <u>Wells-Bey v. Kopp</u>, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, <u>Federal Practice & Procedure</u> § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. <u>Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Balt.</u>, 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. <u>See</u> <u>Moret v. Harvey</u>, 381 F.Supp.2d

458, 464 (D.Md. 2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998)).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

"The Fourth Circuit places 'great weight' on the affidavit requirement." Nautilus Ins. Co. v. REMAC Am., Inc., 956 F.Supp.2d 674, 683 (D.Md. 2013) (quoting Evans, 80 F.3d at 961). However, non-compliance may be excused "if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary." Harrods, 302 F.3d at 244. Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party," such as "complex factual questions about intent and motive." Id. at 247. (quoting 10B Wright, Miller & Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998)) (internal quotation marks omitted).

Nonetheless, a Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trustees, 55 F.3d 943, 954 (4th Cir. 1995)).

Here, the Court concludes that both requirements for conversion are satisfied. Hardy was on notice that the Court might resolve the Motions under Rule 56 because Defendants styled their Motions in the alternative for summary judgment and presented extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464; (see generally MSJ). To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d); see Harrods, 302 F.3d at 244–45. Although Hardy replied to the Motion, he has not asserted that discovery is necessary,[4] and thus the Court will convert the Motion into a motion for summary judgment.

**B.    Summary Judgment**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor.

---

[4] Hardy's cryptic reference to discovery in his opposition is insufficient to raise a Rule 56(d) issue. (See Opp'n at 3).

Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2), (c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing that there is a genuine dispute of material fact. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co., LLC v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citations omitted). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Fed.R.Civ.P. 56).

C.    **Analysis**

Defendants argue that: (1) Hardy failed to exhaust administrative remedies; (2) Hardy failed to state a claim for failure to protect under the Eighth Amendment against Officer Nke; (3) there is no supervisory liability against former Warden Dean; (4) any claim against Defendants in their official capacities is barred by the Eleventh Amendment; and (5) Defendants are entitled to qualified immunity. (MSJ at 5–13, 18–22). At bottom, the Court agrees with Defendants that Hardy failed to exhaust his administrative remedies and that there is no supervisory liability as to the former Warden, and will grant their Motion for Summary Judgment on this basis.

1.    **Exhaustion**

Defendants raised the affirmative defense that Hardy failed to exhaust administrative remedies under the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. (Id. at 5–9). The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see also Chase v. Peay, 286 F.Supp.2d 523, 527–28 (D. Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004).

Notably, administrative exhaustion under Section 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading standard on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. See Jones v. Bock, 549 U.S. 199, 216 (2007). A claim that has not been exhausted may not be considered by this Court. See id. at 220. In other words,

14

exhaustion is mandatory, and a court usually may not excuse an inmate's failure to exhaust. See Ross v. Blake, 578 U.S. 632, 639 (2016).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. Moore v. Bennette, 517 F.3d 717, 725, 729 (4th Cir. 2008); see also Langford v. Couch, 50 F.Supp.2d 544, 548 (E.D.Va. 1999) ("The second PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." Woodford v. Ngo, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Id. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). But the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any Division of Correction ("DOC") official or employee. Md. Code Ann., Corr. Servs. § 10-206(a). However, to have a grievance approved by the IGO, the prisoner must first follow the institutional grievance process before filing a grievance with the IGO. See id. § 10-206(b). Inmates housed at an institution operated by DPSCS may avail themselves of the administrative remedy procedure designed for inmate complaint resolution. See generally id. § 10-201 et seq.; Md. Code Regs. ("COMAR") 12.07.01.01B(1) (defining an ARP).

A prisoner in a DOC institution must file an ARP with the facility's managing official within thirty days of the date on which the incident occurred, or within thirty days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B). If the managing official denies the ARP, the prisoner has thirty days to file an appeal with the Commissioner of Correction. Id. 12.02.28.14(B)(5). If the Commissioner of Correction denies the appeal, the prisoner has thirty days to file a grievance with the IGO. Id. 12.02.28.18. The prisoner must include in the grievance copies of the initial request for administrative remedy, the Warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. Id. 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. Md. Code Ann., Corr. Servs. § 10-207(b)(1); see also COMAR 12.07.01.07(B). An order of dismissal constitutes the final decision of DPSCS for purposes of judicial review. Md. Code Ann., Corr. Servs. § 10-207(b)(2)(ii). An inmate has not exhausted their administrative remedies until they have pursued their grievance through all levels. See Woodford, 548 U.S. at 90; see also Gibbs v. Bureau of Prisons, 986 F.Supp. 941, 943–44 (D.Md. 1997).

The undisputed facts in this case establish that Hardy filed only one ARP related to the incident described in his Complaint and that the ARP had nothing to do with his allegation that Officer Nke failed to protect him from violence. (See Req. Admin. R. at 1–2). Rather, the ARP allegation against Officer Nke was that he lost Hardy's property. (Id.). As such, the Court is unpersuaded by Hardy's conclusory assertion that he exhausted

16

administrative remedies. (See Opp'n at 3). Accordingly, Hardy's claim against Nke is dismissed without prejudice for failure to exhaust administrative remedies.

###    2.    Supervisory liability

Hardy's allegation that former Warden Dean is liable for his injuries because "he is the superintendent of the prison" is a theory of liability known as respondeat superior. (Compl. at 5); Mokhtarian v. Fasci, 481 F.Supp.3d 503, 512 (D.Md. 2020) ("[U]nder the doctrine of respondeat superior, an employer can be held responsible for certain torts by their employees."). Such a theory holds an employer or supervisor liable for the tortious conduct of their employees without requiring a plaintiff to show the employer was also a bad actor. See id. While respondeat superior has its place in some forms of litigation, it does not apply to Section 1983 litigation. See Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (finding that there is no respondeat superior liability under Section 1983).

With the Section 1983 context, liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (quoting Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984)). To state a claim for supervisory liability under Section 1983 based on a subordinate's conduct, the plaintiff must allege that (1) the supervisor had actual or constructive knowledge that the subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff" (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or

17

tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd., 31 F.4th 238, 257 (4th Cir. 2022) (quoting Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)). Hardy has not alleged that the former Warden had any knowledge that Officer Nke nor any other officer knew about a potential threat to Hardy's safety, nor has he alleged that Dean, Jr. responded in a manner that was so inadequate that it could be characterized as deliberate indifference. Rather, Hardy seeks to hold the former Warden responsible for everything that occurred in the prison because it was "his prison." (Compl. at 5). This is not the appropriate standard. Accordingly, the Court will dismiss the Complaint with prejudice as to former Warden Dean, Jr.

## III.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment (ECF No. 18), deny Hardy's Motion to Appoint Counsel (ECF No. 14), grant Defendants' Motion to Seal (ECF No. 19), deny as moot Defendants' Motion for Leave to File Electronic Media (ECF No. 20), and grant Defendants' Motion to Strike (ECF No. 28). A separate Order follows.

Entered this 22nd day of June, 2026.


_____/s/_____
George L. Russell, III
Chief United States District Judge

18